IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) No. 3:11-cv-276 |
| v. | ) ) ) |
| WESTERN REFINING COMPANY, L.P., | ) ) ) |
| Defendant | ) ) |

**COMPLAINT**

The United States of America, by the authority of the Attorney General of the United States, by and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF ACTION

1. This is a civil action brought against Western Refining Company, L.P. ("Western" or the "Defendant") pursuant to (i) the Clean Air Act (the "Act" or "CAA" ), 42 U.S.C. § 7401 *et seq.*; (ii) Sections 103(a) and 109(c) of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9603(a) and 9609(c); and (iii) Sections 304 and 325(b)(3) of the Emergency Planning and Community Right-to-Know Act of 1986 ("EPCRA"), 42 U.S.C. §§ 11004 and 11045(b)(3). This action seeks civil penalties and injunctive relief for violation of certain requirements under those laws at Western's petroleum refinery located at 6500 Trowbridge, El Paso, Texas (the "El Paso Refinery").

2. On information and belief, Western has violated and/or continues to violate the following statutory and regulatory provisions:

(i) Prevention of Significant Deterioration requirements found at Part C of Subchapter I of the Act, 42 U.S.C. § 7475, the regulations promulgated thereunder at 40 C.F.R. § 52.21, and/or the regulations at 30 Texas Administrative Code Chapter 116, Subchapter B, Division 6 (as approved as part of the federally approved Texas State Implementation Plan ("SIP")); and/or "Plan Requirements for Non-Attainment Areas" found at Part D of Subchapter I of the Act, 42 U.S.C. §§ 7502–7503, the regulations promulgated thereunder at 40 C.F.R. § 51.165(a) and (b), 40 C.F.R. Part 51, Appendix S, and 40 C.F.R. § 52.24, and/or the regulations at 30 Texas Administrative Code Chapter

1

116, Subchapter B, Division 5 (as approved as part of the federally approved SIP), with respect to fuel gas combustion devices and fluid catalytic cracking unit catalyst regenerators and NOx, $SO_2$, CO, and/or PM;

  (ii) New Source Performance Standards found at 40 C.F.R. Part 60, Subparts A and J, promulgated under Section 111 of the Act, 42 U.S.C. § 7411, for sulfur recovery plants, fuel gas combustion devices, and/or fluid catalytic cracking unit catalyst regenerators;

  (iii) Leak Detection and Repair requirements promulgated pursuant to Sections 111 and 112 of the Act, 42 U.S.C. §§ 7411 and 7412, and found at 40 C.F.R. Part 60, Subpart GGG; 40 C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H, and CC; and

  (iv) National Emission Standards for Hazardous Air Pollutants for Benzene Waste Operations promulgated pursuant to Section 112(e) of the Act, 42 U.S.C. § 7412(e), and found at 40 C.F.R. Part 61, Subpart FF.

3. On information and belief, the El Paso Refinery has violated certain reporting requirements imposed by CERCLA Section 103, 42 U.S.C. § 9603, and EPCRA Section 304, 42 U.S.C. § 11004.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355. In addition, this Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 167 of the Clean Air Act, 42 U.S.C. §§ 7413(b) and 7477; Section 325(b) of EPCRA, 42 U.S.C. § 11045(b); and Section 109(c) of CERCLA, 42 U.S.C. § 9609(c).

5. Venue is proper in the Western District of Texas pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b); Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3); Section 113(b) of CERCLA, 42 U.S.C. § 9613(b); and 28 U.S.C. §§ 1391(b)–(c), and 1395(a). In addition, Western has waived any objections to venue in this District.

6. Notice of the commencement of this action has been given to the State of Texas under Section 113(a)(1) and (b) of the Clean Air Act, 42 U.S.C. § 7413(a)(1) and (b).

## DEFENDANT

7. Western owns and/or operates the petroleum refinery located at 6500 Trowbridge, El Paso, Texas that is the subject of this action.

8. Western is a "person" as defined in: (i) CAA Section 302(e), 42 U.S.C. § 7602(e); and (ii) CERCLA Section 101(21), 42 U.S.C. § 9601(21).

## STATUTORY AND REGULATORY BACKGROUND: CLEAN AIR ACT

9. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### New Source Review Requirements

10. CAA Section 108(a), 42 U.S.C. § 7408(a), requires EPA to identify and prepare air quality criteria for air pollutants that may endanger public health or welfare. For each such "criteria" pollutant, CAA Section 109, 42 U.S.C. § 7409, requires EPA to promulgate national ambient air quality standards ("NAAQS") requisite to protect the public health and welfare. Pursuant to CAA Sections 108 and 109, EPA has identified as criteria pollutants and promulgated NAAQS for, inter alia, sulfur dioxide ("$SO_2$"), oxides of nitrogen ("$NO_x$"),

particulate matter ("PM"), carbon monoxide ("CO"), and ozone. 40 C.F.R. §§ 50.4–50.11, 50.13.

11. Under CAA Section 107(d), 42 U.S.C. § 7407(d), an area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable." Unclassifiable areas are generally treated as attainment areas. *See* 42 U.S.C. § 7471.

12. States adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS. CAA Section 110, 42 U.S.C. § 7410. The provisions of the approved Texas SIP are identified at 40 C.F.R. Part 52, Subpart SS, 40 C.F.R. §§ 52.2270–52.2311. SIP requirements are federally enforceable. CAA Section 113, 42 U.S.C. § 7413; 40 C.F.R. § 52.23.

13. The CAA's new source review ("NSR") program includes (i) requirements governing the prevention of significant deterioration in attainment and unclassifiable areas (hereinafter "attainment areas") for a particular pollutant (the "PSD" program); and (ii) requirements applicable to non-attainment areas for a particular pollutant (the "Nonattainment NSR" program). EPA initially approved Texas's PSD program in 1992, 57 Fed. Reg. 28,093 (June 24, 1992) (effective July 24, 1992), and initially approved Texas's Nonattainment NSR program in 1980, 45 Fed. Reg. 19,244 (Mar. 25, 1980) (effective Mar. 25, 1980).

*Prevention of Significant Deterioration Requirements*

14. Part C of Title I of the CAA, 42 U.S.C. §§ 7470–7492, sets forth requirements for the prevention of significant deterioration of air quality in attainment areas. CAA Section 165(a), 42 U.S.C. § 7475(a), prohibits the construction and subsequent operation of a major

emitting facility in attainment areas unless a PSD permit has been issued. Section 169(1) of the Act, 42 U.S.C. § 7479(1), defines "major emitting facility" as a source with the potential to emit 250 tons per year ("tpy") or more of any air pollutant.

15. Any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit. 40 C.F.R. § 52.21(a)(2)(iii), 31 Tex. Admin. Code § 116.3(a)(13) (Supp. 1989 and 1992), 31 Tex. Admin. Code § 116.3(a)(11) (1993), 30 Tex. Admin. Code § 116.160(a) (1996, 1999, and 2002). "Major modification" means any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act. 40 C.F.R. § 52.21(b)(2)(i), 31 Tex. Admin. Code § 116.3(a)(13) (Supp. 1989 and 1992), 31 Tex. Admin. Code § 116.3(a)(11) (1993), 30 Tex. Admin. Code § 116.160(a) (1996, 1999, and 2002). A new major stationary source or a major modification in an attainment area shall install and operate best available control technology ("BACT") for each pollutant subject to regulation under the CAA that it would have the potential to emit in significant quantities. 40 C.F.R. § 52.21(j), 30 Tex. Admin. Code § 116.3(a)(3) (Supp. 1991).

*Nonattainment New Source Review Requirements*

16. Part D of Title I of the CAA, 42 U.S.C. §§ 7501–7515 sets forth requirements for attaining the NAAQS in those areas designated as not attaining the NAAQS. Under CAA Section 172(c)(5), 42 U.S.C. § 7502(c)(5), a state is required to adopt Nonattainment NSR SIP rules that require that all permits for the construction and operation of modified major stationary sources within nonattainment areas conform to the requirements of Section 173 of the CAA, 42 U.S.C. § 7503. Section 173 of the CAA, in turn, sets forth a series of requirements for the issuance of permits for major modifications to major stationary sources within nonattainment

areas. 42 U.S.C. § 7503. See also 31 Tex. Admin. Code § 116.3(a)(10)(A) (1993) and 30 Tex. Admin. Code § 116.151(a) (1999).

17. CAA Section 173, 42 U.S.C. § 7503, requires that, in order to obtain a Nonattainment NSR permit, the source must, among other things (i) obtain federally enforceable emission offsets at least as great as the new source's emissions, and (ii) comply with the lowest achievable emission rate as defined in CAA Section 171(3), 42 U.S.C. § 7501(3). See also 31 Tex. Admin. Code § 116.3(a)(10)(A) and (C) (1993) and 30 Tex. Admin. Code § 116.151(c)(1) and (3) (1999).

18. A "major stationary source" is one that emits or has the potential to emit the number of tons per year or more of a regulated pollutant listed in 40 C.F.R. § 51.165(a)(1)(iv). *See also* 40 C.F.R. § 52.24(f), 31 Tex. Admin. Code §§ 101.1 and 116.3(a)(10) (1993), 30 Tex. Admin. Code §§ 101.1 and 116.3(a)(10) (1994), 30 Tex. Admin. Code § 116.12 (2000, 2002, and 2004), and 30 Tex. Admin. Code § 116.151 (1999).

### New Source Performance Standards: Flares and Other Units

19. CAA Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within certain categories of stationary sources. "New sources" are defined as stationary sources, the construction or modification of which is commenced after the publication of the regulations or proposed regulations prescribing a standard of performance applicable to such source. 42 U.S.C. § 7411(a)(2).

20. Pursuant to CAA Section 111(b)(1)(A), 42 U.S.C. § 7411(b)(1)(A), EPA has identified petroleum refineries as a category of regulated stationary sources. *See, e.g.,* 40 C.F.R. § 60.100(a).

21. Pursuant to CAA Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), EPA promulgated New Source Performance Standards ("NSPS") for various industrial categories, including petroleum refineries. NSPS requirements for petroleum refineries are codified at 40 C.F.R. Part 60, Subpart J, §§ 60.100–60.109.

22. The provisions of 40 C.F.R. Part 60, Subpart J, apply to specified "affected facilities," including, *inter alia*, fluid catalytic cracking unit catalyst regenerators and fuel gas combustion devices that commenced construction or modification after June 11, 1973, 40 C.F.R. § 60.100(a), (b), and Claus sulfur recovery plants that have a capacity greater than 20 long tons per day that commenced construction or modification after October 4, 1976. 40 C.F.R. § 60.100(a) and (b).

23. 40 C.F.R. § 60.102(a) establishes an emission limitation that generally prohibits the discharge into the atmosphere from any affected fluid catalytic cracking unit catalyst regenerator of (i) particulate matter in excess of 1.0 kg/1000 kg (1.0 lb/1000 lb) of coke burn-off in the catalyst regenerator, and (ii) gases exhibiting greater than 30 percent opacity, except for one six-minute average opacity reading in any one hour period.

24. 40 C.F.R. § 60.103(a) establishes an emission limitation that prohibits the discharge into the atmosphere from any fluid catalytic cracking unit catalyst regenerator any gases that contain CO in excess of 500 ppm by volume (dry basis).

25. Pursuant to 40 C.F.R. § 60.104(b), the owner or operator of each affected fluid catalytic cracking unit catalyst regenerator shall comply with one of the emission limitations for control of $SO_2$ emissions set forth in 40 C.F.R. § 60.104(b)(1), (2), or (3).

26. 40 C.F.R. § 60.104(a)(1) establishes an emission limitation that prohibits the burning in any affected fuel gas combustion device any fuel gas that contains hydrogen sulfide in

7

excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10. The combustion in a flare of process upset gases or fuel gas that is released to the flare as a result of relief valve leakage or other emergency malfunctions is exempt from the emission limit imposed by 40 C.F.R. § 60.104(a)(1).

27. Pursuant to CAA Section 111(b), 42 U.S.C. § 7411(b), EPA has promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1–60.19, that apply to owners or operators of any stationary source that contains an "affected facility" subject to regulation under 40 C.F.R. Part 60.

28. 40 C.F.R. § 60.11(d) requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

### Leak Detection and Repair

29. Several sets of EPA regulations establish leak detection and repair ("LDAR") requirements applicable to certain types of equipment at petroleum refineries. First, pursuant to CAA Section 111, 42 U.S.C. § 7411, EPA promulgated NSPS Standards of Performance for Equipment Leaks of VOC in Petroleum Refineries at 40 C.F.R. Part 60, Subpart GGG. Subpart GGG, in turn, incorporates many of the NSPS requirements at 40 C.F.R. Part 60, Subpart VV. Second, pursuant to CAA Section 112, 42 U.S.C. § 7412, EPA promulgated national emission standards for hazardous air pollutants ("NESHAP") at 40 C.F.R. Part 61, and NESHAP requirements for particular source categories at 40 C.F.R. Part 63. The relevant NESHAP requirements are found at 40 C.F.R. Part 61, Subpart J (for equipment leaks of benzene) and Subpart V (for equipment leaks); and 40 C.F.R. Part 63, Subpart F (for organic hazardous air

pollutants from the synthetic organic chemical manufacturing industry), Subpart H (for organic hazardous air pollutants for equipment leaks) and Subpart CC (for hazardous air pollutants from petroleum refineries).

30. The LDAR regulations require, *inter alia*, the refinery-wide inventory of all possible leaking equipment, the regular monitoring of that equipment to identify leaks, and the repair of leaks.

### Benzene Waste NESHAP

31. In March 1990, EPA promulgated national emission standards applicable to benzene-containing waste streams. The benzene waste regulations are set forth at 40 C.F.R. Part 61, Subpart FF (National Emission Standard for Benzene Waste Operations).

32. Pursuant to the Benzene Waste NESHAP, refineries are required to calculate the total annual benzene ("TAB") content in their waste streams. If the TAB is over 10 megagrams, the refinery is required to elect a control option that will require the control of all or selected waste streams.

### CAA Enforcement Provisions

33. CAA Section 113(b), 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action for a permanent or temporary injunction, and/or for a civil penalty, whenever any person has violated: (i) any requirement or prohibition of any applicable SIP or permit; or (ii) any other requirement or prohibition under a pertinent provision of the CAA, including, but not limited to, any NSPS or NESHAP requirement.

34. As provided by CAA Section 113(b), 42 U.S.C. § 7413(b), the Civil Penalties Inflation Adjustment Act of 1990 ("CPIAA"), 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and EPA regulations codified at 40 C.F.R. Part 19, any person who violates pertinent

9

requirements of the CAA shall be liable for a civil penalty of up to: (i) $25,000 per day for each such violation occurring on or before January 30, 1997; (ii) $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

## FIRST CLAIM FOR RELIEF
(NSR Violations at the FCCU and Heaters and Boilers)

35. Paragraphs 1 and 2, 4 through 18, and 33 and 34 are realleged and incorporated by reference as if fully set forth herein.

36. Western owns and/or operates a fluidized catalytic cracking unit ("FCCU") at the El Paso Refinery.

37. Western owns and/or operates multiple heaters and/or boilers at the El Paso Refinery.

38. Upon information and belief, Western has modified the FCCU and/or certain heaters and/or boilers at the El Paso Refinery.

39. Upon information and belief, certain of those FCCU and/or heater and/or boiler modifications constituted a "major modification" under the CAA and the applicable NSR program regulations, to existing major stationary sources, that resulted in a significant net emissions increase of one or more regulated criteria pollutants, including $SO_2$ and/or $NOx$.

40. Upon information and belief, since the major modification of the FCCU and/or certain of the heaters and/or boilers, Western has been in violation of the CAA and the applicable NSR program regulations as a result of not undergoing an appropriate new source review, not obtaining required NSR permits, and not installing and operating the technology required for the control of pollutants for which a significant net emissions increase occurred.

41. Western's violations of the Act set forth in this Claim for Relief make Western subject to injunctive relief and to civil penalties of up to (i) $25,000 per day for each violation on or before January 30, 1997; (ii) $27,500 per day for each violation between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

## SECOND CLAIM FOR RELIEF
(NSPS Subpart J Violations at the FCCU Catalyst Regenerator)

42. Paragraphs 1 and 2, 4 through 9, 19 through 28, and 33 and 34 are realleged and incorporated by reference as if fully set forth herein.

43. Western is the "owner" and/or "operator," within the meaning of CAA Section 111(a)(5), 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of a fluidized catalytic cracking unit regenerator ("FCCU regenerator") at the El Paso Refinery.

44. The FCCU regenerator is a "fluid catalytic cracking unit catalyst regenerator" within the meaning of 40 C.F.R. § 60.101(n), and a "stationary source" within the meaning of CAA Sections 111(a)(3) and 302(z), 42 U.S.C. §§ 7411(a)(3) and 7602(z).

45. Upon information and belief, that FCCU regenerator is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and a "new source" within the meaning of CAA Section 111(a)(2), 42 U.S.C. § 7411(a)(2), with respect to certain regulated pollutants, including $SO_2$, CO, PM, and/or opacity.

46. The FCCU regenerator is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60, Subpart J, with respect to certain regulated pollutants, including $SO_2$, CO, PM, and/or opacity.

47. Among other requirements imposed by NSPS Subpart J, air emissions from the FCCU regenerator are subject to the applicable NSPS Subpart J emission limitations for $SO_2$, CO, PM, and/or opacity.

48. Upon information and belief, the FCCU regenerator at the El Paso Refinery has been operated in violation of the applicable NSPS Subpart J emission limitations for $SO_2$, CO, PM, and/or opacity.

49. Western's violations of the CAA, as set forth in this Claim for Relief, make the Defendant subject to injunctive relief and civil penalties of up to: (i) $25,000 per day for each violation on or before January 30, 1997; (ii) $27,500 per day for each violation between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

### THIRD CLAIM FOR RELIEF
(NSPS Subpart J Violations at Flaring Devices and Heaters and Boilers)

50. Paragraphs 1 and 2, 4 through 9, 19 through 28, and 33 and 34 are hereby realleged and incorporated by reference as if fully set forth herein.

51. Western is the "owner" and/or "operator," within the meaning of CAA Section 111(a)(5), 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of flaring devices and heaters and boilers located at the El Paso Refinery.

52. Each such flaring device, heater, or boiler is a "fuel gas combustion device" within the meaning of 40 C.F.R. § 60.101(g), and a "stationary source" within the meaning of CAA Sections 111(a)(3) and 302(z), 42 U.S.C. §§ 7411(a)(3) and 7602(z).

53. Upon information and belief, certain of those flaring devices, heaters, and/or boilers are "affected facilities" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and "new sources" within the meaning of CAA Section 111(a)(2), 42 U.S.C. § 7411(a)(2).

12

54. Each such flaring device, heater, and/or boiler is subject to the General Provisions of the NSPS, 40 C.F.R. Part 60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60, Subpart J.

55. Among other requirements imposed by NSPS Subpart J, each such flaring device, heater, and/or boiler is subject to the applicable NSPS Subpart J emission limitations for fuel gas combustion devices.

56. Upon information and belief, certain of the flaring devices, heaters, and/or boilers at the El Paso Refinery that are "affected facilities" under NSPS Subpart J have been operated in violation of the applicable NSPS Subpart J emission limitations for fuel gas combustion devices.

57. Western's violations of the CAA, as set forth in this Claim for Relief, make the Defendant subject to injunctive relief and civil penalties of up to: (i) $25,000 per day for each violation on or before January 30, 1997; (ii) $27,500 per day for each violation between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

### FOURTH CLAIM FOR RELIEF
(NSPS Subpart A: Good Air Pollution Control Practices at
FCCU Regenerator, Heaters and Boilers, and Flaring Devices)

58. Paragraphs 1 and 2, 4 through 9, 19 through 28, and 33 and 34 are hereby realleged and incorporated by reference as if fully set forth herein.

59. Upon information and belief, under circumstances that did not represent good air pollution control practices, Western has emitted certain of the following pollutants in violation of 40 C.F.R. § 60.11(d): (i) $SO_2$, PM, and/or CO from the FCCU regenerator at the El Paso Refinery; and/or (ii) $SO_2$ from certain flaring devices, heaters, and/or boilers at the El Paso Refinery.

60. Western's violations of the CAA, as set forth in this Claim for Relief, make the Defendant subject to injunctive relief and civil penalties of up to: (i) $25,000 per day for each violation on or before January 30, 1997; (ii) $27,500 per day for each violation between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

## FIFTH CLAIM FOR RELIEF
(Leak Detection and Repair Requirements)

61. Paragraphs 1 and 2, 4 through 9, 29 and 30, and 33 and 34 are realleged and incorporated by reference as if fully set forth herein.

62. Western is required under 40 C.F.R. Part 60, Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which references standards set forth at 40 C.F.R. §§ 60.482-1 through 60.482-10, and alternative standards set forth at 40 C.F.R. §§ 60.483-1 through 60.483-2, for certain of its refinery equipment in light liquid and gas and/or vapor service, constructed or modified after January 4, 1983.

63. Pursuant to 40 C.F.R. Part 61, Subpart J, Western is required to comply with the LDAR requirements set forth at 40 C.F.R. Part 61, Subpart V, for certain specified equipment in light liquid and gas and/or vapor benzene service.

64. Upon information and belief, Western has violated such LDAR requirements at the El Paso Refinery by failing to: (i) accurately monitor certain valves and other components as required by Standard Method 21; (ii) report the valves and other components that were leaking; and/or (iii) repair leaking valves and other components in a timely manner.

65. Western's violations of the CAA, as set forth in this Claim for Relief, make the Defendant subject to injunctive relief and civil penalties of up to: (i) $25,000 per day for each violation on or before January 30, 1997; (ii) $27,500 per day for each violation between January

30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

### SIXTH CLAIM FOR RELIEF
(Benzene Waste NESHAP)

66. Paragraphs 1 and 2, 4 through 9, and 31 through 34 are hereby realleged and incorporated by reference as if fully set forth herein.

67. At times relevant to this Complaint, the El Paso Refinery had a TAB quantity from refinery waste of over 10 Mg/yr, and the El Paso Refinery has been subject to the requirements of the Benzene Waste NESHAP regulations set forth at 40 C.F.R., Part 61, Subpart FF, in particular at 40 C.F.R. § 61.342.

68. Upon information and belief, at the El Paso Refinery, Western has violated Benzene Waste NESHAP requirements by failing to manage and treat benzene-containing facility waste in accordance with the standards established by Subpart FF, in particular at 40 C.F.R. § 61.342.

69. Western's violations of the CAA, as set forth in this Claim for Relief, make the Defendant subject to injunctive relief and civil penalties of up to: (i) $25,000 per day for each violation on or before January 30, 1997; (ii) $27,500 per day for each violation between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each violation occurring after March 15, 2004.

### SEVENTH CLAIM FOR RELIEF
(Failure to Report Certain Releases as Required By
CERCLA Section 103 and EPCRA Section 304)

70. Paragraphs 1 through 8 are hereby realleged and incorporated by reference as if fully set forth herein.

71.     Upon information and belief, Western violated release reporting requirements under CERCLA Section 103, 42 U.S.C. § 9603, on certain occasions by failing to report certain releases of sulfur dioxide and/or hydrogen sulfide that resulted from acid gas flaring incidents at the El Paso Refinery. Upon information and belief, Western failed to report such releases to the National Response Center as required by CERCLA Section 103, 42 U.S.C. § 9603.

72.     Upon information and belief, Western violated release reporting requirements under EPCRA Section 304, 42 U.S.C. § 11004, on certain occasions between October 31, 1997 and the date of this Complaint by failing to report certain releases of sulfur dioxide and/or hydrogen sulfide that resulted from acid gas flaring incidents at the El Paso Refinery. Upon information and belief, for such releases, Western failed to make an immediate report to the state emergency response commission ("SERC") and/or to the appropriate local emergency planning committee ("LEPC"), and/or failed to provide a written follow-up notice as soon as practicable after the release, as required by EPCRA Section 304, 42 U.S.C. § 11004.

73.     Western's violations of release reporting requirements under CERCLA Section 103 and EPCRA Section 304, as set forth in this Claim for Relief, make Western subject to injunctive relief and to civil penalties of up to (i) $25,000 per day for each day the violation continued, and $75,000 per day for each day that any second or subsequent violation continued, for any violation that occurred on or before January 30, 1997; (ii) $27,500 per day for each day the violation continued, and $82,500 per day for each day that any second or subsequent violation continued, for any violation that occurred between January 30, 1997 and March 15, 2004; and (iii) $32,500 per day for each day the violation continued, and $97,500 per day for each day that any second or subsequent violation continued, for any violation that occurred after March 15, 2004.

## PRAYER FOR RELIEF

Unless restrained by an Order of the Court, violations of the Clean Air Act will continue.

The United States respectfully requests that this Court:

1.   Order Western to immediately comply with the statutory and regulatory requirements cited in this Complaint;

2.   Order Western to take appropriate measures to mitigate the effects of its violations;

3.   Assess civil penalties against Western for up to the amounts provided in the applicable statutes; and

4.   Grant the United States such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

_____
IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Robert R. Klotz
ROBERT R. KLOTZ
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
California State Bar No. 114991
202-514-5516 (Telephone)
202-514-8865 (Facsimile)

JOHN E. MURPHY
United States Attorney
JOHN F. PANISZCZYN
Assistant United States Attorney
State Bar No. 15443855
601 NW Loop 410, Ste. 600
San Antonio, TX 78216
210-384-7325 (Telephone)
210-384-7358 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I electronically filed the foregoing *Complaint* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

no other parties;

and I hereby certify that I caused true and correct copies of the foregoing *Complaint* to be served by first class mail, postage prepaid, on the following:[1]

General Counsel
123 W. Mills Avenue, Suite 200
El Paso, TX 79901

Paul Seals
Guida, Slavich & Flores, P.C.
816 Congress Avenue, Suite 1500
Austin, Texas 78701
512.476.6331 fax
512.476.6300 office
512.476.6328 direct

Date: June 30, 2011

/s/ Robert R. Klotz
ROBERT R. KLOTZ

---

[1] Western has agreed to accept service by mail and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. (See pages 101–102, paragraph 85, of the proposed Consent Decree, which is an attachment to the Notice of Lodging filed simultaneously with this Complaint.)